UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                      )
MICHAEL FENWICK,                       )
                                                      )
            Plaintiff,                         )
                                                      )
    v.                                            )          Civil Action No. 07-2330 (PLF)
                                                      )
UNITED STATES OF AMERICA, *et al.*    )
                                                      )
            Defendants.                     )
_____)

OPINION

            Plaintiff Michael Fenwick claims that individual defendants Andrew Pudimott,

Jeremy Fischer, and John Mickle — all Deputy United States Marshals — violated his Fourth

Amendment rights and committed the common law torts of false imprisonment, assault, and

battery against him.  He seeks damages from the individual defendants under Bivens v. Six

Unknown Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), and from the United States

pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b).  Currently pending before the

Court are (1) defendants' motion to dismiss plaintiff's complaint against the individual

defendants for insufficient service of process and failure to state a claim, (2) defendants' motion

for summary judgment, and (3) the plaintiff's objection and motion to strike all juvenile court

records submitted by the defendants in support of their motions to dismiss and for summary

judgment ("motion to strike").[1]

---

[1]        The papers submitted in connection with these motions include: the plaintiff's
complaint ("Compl."); defendants' motion to dismiss or, in the alternative, for summary
judgment ("Defs.' Mot."); plaintiff's opposition to the defendants' motion ("Pl.'s Opp."); Pl.'s
Opp., Ex. 3 (Declaration of Michael Fenwick) ("Fenwick Decl."); plaintiff's motion to strike

After consideration of the parties' arguments and the applicable law, the Court will grant defendants' motion to dismiss in part, deny the remainder of that motion without prejudice, deny plaintiff's motion to strike, and defer any ruling on defendants' motion for summary judgment until the parties have submitted additional briefs and documents as instructed in this Opinion and the accompanying Order.

## I.  BACKGROUND

On January 3, 2007, Michael Fenwick drove a green Lincoln into the parking lot of an apartment complex in Washington, D.C., parked, and got out of the car.  Pl.'s Opp. at 3-4. He walked to the door of his girlfriend's apartment and then, finding that she was not at home, returned to the car.  Id. at 4.  In the meantime, defendants Pudimott, Fischer, and Mickle ("the deputies") were standing nearby in the parking lot, waiting to enforce an eviction order issued for one of the units in the complex.  Id. at 4.

The parties' accounts of what happened next diverge widely.  According to the defendants, based on Mr. Fenwick's appearance and behavior and the appearance of his car, the deputies developed a reasonable suspicion that Mr. Fenwick was driving a stolen automobile. Defs.' Mot. at 4.  As Mr. Fenwick was standing beside the Lincoln after returning from his girlfriend's apartment, they asked him to stop and speak with them.  Id.  Although Mr. Fenwick heard their request, he did not stop, but instead got into the car and put it in reverse.  Id.  He then

_____

("Pl.'s Mot."); plaintiff's memorandum in support of his motion to strike ("Pl.'s Mem."); defendants' response to plaintiff's motion to strike and reply to plaintiff's opposition to defendants' motion ("Defs.' Resp."); and plaintiff's reply to defendants' opposition to plaintiff's motion to strike ("Pl.'s Reply").  In support of their memoranda of law, both the plaintiff and the defendants have submitted certain exhibits under seal, at Docket No. 32 ("Defs.' Sealed Exhibits") and Docket No. 31 ("Pl.'s Sealed Exhibits").

drove the car forward toward "one or more [of the] deputies," placing their lives in danger.  Id. at 25.  Responding to the "apparent threat to the safety of themselves, fellow officers, and/or possibly other bystanders," Deputies Pudimott and Fischer fired several shots at Mr. Fenwick, id. at 26, before he drove off, leaving the parking lot.  Compl. ¶ 38.

Mr. Fenwick, in contrast, claims that he did not hear the deputies' requests that he stop and talk to them.  Pl.'s Opp. at 5.  Not understanding that they wished him to stay in the parking lot, he climbed into his car and began to back out of his parking space.  Id. at 6.  After the car had pulled out of the space, it stopped while Mr. Fenwick changed gears.  Fenwick Decl. at 3.  At that point Deputy Pudimott began shooting at Mr. Fenwick.  Deputy Fischer also "fired before [Mr. Fenwick] heard any orders to stop," and "while the car was stopped."  Pl.'s Opp. at 12.  Once Mr. Fenwick began to drive forward in the car, Deputy Fischer fired "at least" one other shot at him "as [Mr. Fenwick] was driving away."  Id. at 12.  At no time did the deputies "fear[] for their lives."  Id. at 12.

Unlike the shooting itself, the events that followed are, for the most part, not in dispute.  Although he had been struck during the shooting, Mr. Fenwick managed to drive out of the parking lot.  Fenwick Decl. at 3.  Soon afterward, he checked into a hospital for treatment of his injuries and was apprehended by police while there.  Id.

In February 2007, Mr. Fenwick, who was sixteen years old at the time, was charged as a juvenile with, among other things, aggravated assault on a police officer and receipt and  conversion of stolen property.  Defs.' Sealed Ex. 7 at 2-3.  His case was tried before a judge in the Family Division of the Superior Court of the District of Columbia.  Id.  During the trial, Mr. Fenwick's counsel moved for the exclusion of tangible evidence, including the allegedly

stolen car driven by Mr. Fenwick and all physical evidence collected from Mr. Fenwick at the hospital, on the ground that the evidence had been recovered as a direct result of the illegal seizure of Mr. Fenwick in violation of the Fourth Amendment.  Defs.' Sealed Ex. 3 at 6.  That seizure, according to counsel, occurred when "the deputies ran over to [the car Mr. Fenwick was driving] with guns drawn and then shot the driver."  Id. at 5.

The court rejected Mr. Fenwick's motion to suppress, stating, "I don't see or find anything inappropriate in [the deputies'] actions at all."  Pl.'s Sealed Ex. 14 at 5.  In a separate ruling, the court found Mr. Fenwick "guilty/involved" as to one count each of assault on a police officer with a dangerous weapon, receipt of stolen property, and unauthorized use of a vehicle.  Pl.'s Sealed Ex. 16 at 2-3; Defs.' Sealed Ex. 6 at 5.  An appeal from that decision is pending in the District of Columbia Court of Appeals.  See Defs.' Sealed Ex. 6.

On December 28, 2007, this action was filed by Mr. Fenwick's mother, Cheryl Fenwick, who served as the primary plaintiff in this case until Mr. Fenwick reached the age of majority.  The complaint alleges that Deputies Fischer, Mickle, and Pudimott violated Mr. Fenwick's rights under the Fourth Amendment to the Constitution, and that the United States is liable to Mr. Fenwick under the Federal Tort Claims Act for acts of assault, battery, and false imprisonment committed by the deputies in the course of their employment.  Mr. Fenwick seeks $10 million in compensatory damages and $100 million in punitive damages.

## II.  DISCUSSION

### A.  Defendants' Motion to Dismiss

The defendants have submitted a single motion entitled "Motion to Dismiss or, in the Alternative, for Summary Judgment."  For clarity, the Court will treat that filing as two separate motions, one to dismiss and one for summary judgment.  The defendants assert four grounds for dismissal of some or all of the plaintiff's claims: (1) Deputies Purdimott, Fischer, and Mickle have never been properly served with process, and so claims against them should be dismissed pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure, Defs.' Opp. at 10; (2) Mr. Fenwick cannot raise any common law tort claims against the deputies in their individual capacities because those claims are barred by the FTCA, id. at 33; (3) the plaintiff's claims against Deputy Mickle are so vague and insubstantial that they must be dismissed; and (4) "[p]laintiff has failed to state a claim for relief" because "[t]he defendants are, at a minimum, entitled to qualified immunity."  Id. at 19-20.

With regard to the fourth contention, the Court notes that although the defendants' phrasing suggests that they are seeking a dismissal of plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides for the dismissal of a complaint in the event that it "fail[s] to state a claim upon which relief can be granted," the defendants' arguments regarding qualified immunity cannot be resolved on a motion to dismiss.  The defendants rely on materials outside the pleadings in making their qualified immunity arguments, see, e.g., Defs.' Mot. at 29-30, and so those arguments must be addressed as part of a motion for summary judgment.  See FED. R. CIV. P. 12(d).  Similarly, the defendants' arguments concerning the sufficiency of the plaintiff's claims against Deputy Mickle refer to material outside the pleadings,

see Defs.' Reply at 20, and therefore will also be treated as part of the summary judgment

motion.  The Court's discussion of the defendants' motion to dismiss thus encompasses only two

issues: insufficiency of service of process and the propriety of claims against the deputies under

the FTCA.

1.  Insufficiency of Service of Process

Service of process upon individuals within a judicial district of the United States

is governed by Rule 4(e) of the Federal Rules of Civil Procedure.  Rule 4(e)(2) states that service

upon an individual may be effected by

> (A) delivering a copy of the summons
> and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's
> dwelling or usual place of abode with someone of suitable age and
> discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized
> by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e)(2).[2]  If a plaintiff fails to make proper service upon a defendant "within 120

days after the complaint is filed, the court . . . must dismiss the action without prejudice against

that defendant or order that service be made within a specified time.  But if the plaintiff shows

good cause for the failure, the court must extend the time for service for an appropriate period."

---

[2]      The plaintiff maintains that service was made under Rule 4(i)(3) of the Federal
Rules of Civil Procedure.  See Pl.'s Opp. at 17.  That Rule, however, simply requires that the
United States also be served whenever one of its employees is "sued in an individual capacity for
an act or omission occurring in connection with duties performed on the United States' behalf."
FED. R. CIV. P. 4(i)(3).  It does not alter or control the manner in which individuals must be
served under Rule 4(e).  See id. (requiring a party to serve the United States and "also serve the
officer or employee under Rule 4(e), (f), or (g)").

FED. R. CIV. P. 4(m).  "The law is clear that the party on whose behalf service is made has the

burden of establishing its validity when challenged."  Chen v. District of Columbia, 256 F.R.D.

263, 266 (D.D.C. 2009) (citation and internal quotation marks omitted).

The defendants argue that Mr. Fenwick has failed to make proper service upon

Deputies Pudimott, Mickle, and Fischer because the plaintiff's process server never met any of

the requirements of Rule 4(e)(2) of the Federal Rules.  Defs.' Mot. at 11-12.  As Mr. Fenwick

concedes, the process server did not personally deliver copies of the summons and complaint to

the deputies or leave copies at their "dwelling or place of abode."  See Pl.'s Opp. at 17.  Instead,

according to his affidavits, he left the appropriate documents with Edward Bordley, an employee

of the Office of the General Counsel of the United States Marshals Service who allegedly

claimed to be an agent authorized to accept service on behalf of the deputies.  See Affidavit of

Service, Docket No. 3, ¶¶ 2-3.  The individual defendants, however, claim that Mr. Bordley was

never authorized to accept service on their behalf and have produced a declaration in which Mr.

Bordley says that he told the plaintiff's process server that he was *not* authorized to accept

service for the deputies.  Defs.' Mot., Ex. 2, ¶¶ 3-4.  Specifically, Mr. Bordley states:

> On April 23, 2008, I received a telephone call from a
> process server stating that he wished to serve a Summons and
> Complaint for [this case].  I informed him that I would accept
> service on behalf of the U.S. Marshals Service, but if the case
> involved an action against USMS personnel in their individual
> capacities, then the individuals should be served pursuant to Rule 4
> of the Federal Rules of Civil Procedure.
>
> . . . . Later in the day on April 23, 2008, I met with the
> process server in the lobby of USMS headquarters . . . I again
> informed him that I was not authorized to accept service on behalf
> of USMS personnel sued in their individual capacities.

Id.

"[C]laims by an agent of having authority to receive process or the fact that an agent actually accepts process is not enough" to satisfy the service requirements of Rule 4(e)(2); "there must be evidence that the defendant[s] intended to confer that authority upon the agent." 4A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1097 (3d ed. 2002); see also Schwarz v. Thomas, 222 F.2d 305, 308 (D.C. Cir. 1955) (statements of alleged agent are not sufficient evidence of authority to accept process). Even if Mr. Bordley did, as the process server alleges, claim to be authorized to receive process for the individual defendants, Mr. Fenwick has produced no evidence demonstrating any intent on the part of the deputies to authorize Mr. Bordley to receive service on their behalf. As a result, the Court concludes that Mr. Fenwick has failed to make proper service upon defendants Fischer, Mickle, and Pudimott.

A plaintiff who, like Mr. Fenwick, has failed to meet the requirements of Rule 4 may nevertheless avoid dismissal of his complaint if he can show "good cause" for his failure. FED. R. CIV. P. 4(m). Even if the plaintiff lacks good cause, the Court may, in its discretion, afford the plaintiff additional time in which to effect service properly. Id. Here, the Court has determined that even if Mr. Fenwick lacks good cause for his failure to comply with Rule 4 up to this point, he should be permitted additional time in which to serve the individual defendants. See id. advisory committee's note (1993 amendments) (court is authorized to "relieve a plaintiff of the consequences" of Rule 4(m) "even if there is no good cause shown").

The defendants filed their motion to dismiss, outlining the defects in Mr. Fenwick's attempted service of the deputies, on May 22, 2009. That motion was fully briefed by August 20, 2009. The statute of limitations on Mr. Fenwick's Bivens claims expired on January

3, 2010, three years after the date of his confrontation with the deputies.  See Lederman v. United States, 131 F. Supp. 2d 46, 61 (D.D.C. 2001) (statute of limitations for Bivens claims is three years).  If Mr. Fenwick's claims against the individual defendants had been dismissed pursuant to Rule 4(m) soon after the defendants' motion became ripe, that dismissal would have been without prejudice, see Chen v. District of Columbia, 256 F.R.D. at 267, and Mr. Fenwick could have refiled his claims against the deputies before January 3, 2010.  If the Court were to dismiss Mr. Fenwick's claims without prejudice now, however, those claims would be barred by the statute of limitations, and the Court's dismissal therefore would effectively insulate the individual defendants from potential liability.  See FED. R. CIV. P. 4(m) advisory committee's note (1993 amendments) (relief from dismissal "may be justified . . . if the applicable statute of limitations would bar the refiled action").  The Court will not impose such an outcome on Mr. Fenwick simply because its decision comes now rather than before January 3, 2010.  Instead, it will require Mr. Fenwick to effect proper service upon the defendant deputies by April 15, 2010.  If he fails to comply with Rule 4 by that date, the defendants may renew their motion to dismiss.

### 2.  Claims Against Individual Defendants Under the FTCA

As the defendants note, "[i]t is unclear whether Plaintiff is seeking to recover against the individual defendants . . . under the Federal Tort Claims Act."  Defs.' Mot. at 33.  Mr. Fenwick's complaint claims that "the United States is liable" under the FTCA "for the . . . actions of the individual Defendant officers."  Compl. ¶ 42.  In the next paragraph of the complaint, however, the plaintiff requests "judgment against Defendant officers, jointly and severally, in the sum of $10,000,000" under the FTCA.  Id. at 5.  Mr. Fenwick's response to the

defendants' motion to dismiss fails to clarify his intentions, stating that "[p]laintiff's common

law claims against Defendants Pudimott, Fischer, and Mickle are adequately stated, even if they

must be brought against the United States under the Federal Tort Claims Act."  Pl.'s Opp. at 44.

Mr. Fenwick thus appears to acknowledge that only the United States, and not the individual

defendants in this matter, may be held liable under the FTCA even as he insists that he has

"common law [tort] claims against" the defendant deputies.

 To be clear, while Mr. Fenwick may have constitutional claims against the

deputies under Bivens, he has no valid common law tort claims against them; such claims may be

asserted only against the United States.  As the Supreme Court has explained:

> The Federal Employees Liability Reform and Tort Compensation
> Act of 1988, commonly known as the Westfall Act, accords federal
> employees absolute immunity from common-law tort claims
> arising out of acts they undertake in the course of their official
> duties.

Osborn v. Haley, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)).  Mr. Fenwick

himself declares that the defendant deputies "were acting as law enforcement officials and within

the scope of their employment at the time of the incident" that gave rise to this action.  Compl.

¶ 42.  The Attorney General has reached the same conclusion, certifying that the deputies "were

acting within the scope of their employment as employees of the United States at the time of the

alleged incident."  Defs.' Mot., Ex. A.  As a result, any tort claims Mr. Fenwick might otherwise

be able to assert against the deputies are foreclosed by the Westfall Act, and Mr. Fenwick must

instead press those claims against the United States alone.  See 28 U.S.C. § 2679(d)(4);

28 U.S.C. 2679(b)(1).  Thus, to the extent that Mr. Fenwick attempts to state common law tort

claims against the individual defendants, those claims must be dismissed.

*B. Plaintiff's Motion to Strike*

As part of their motion for summary judgment, the defendants argue that Mr.

Fenwick's claims against them are precluded by the outcome of the proceedings against Mr.

Fenwick in the Family Division of the Superior Court of the District of Columbia.  Defs.' Mot. at

14.  Specifically, they contend that the Superior Court considered some of the issues underlying

Mr. Fenwick's current claims and resolved them in a manner unfavorable to him, meaning that

Mr. Fenwick is barred by the doctrines of res judicata and/or collateral estoppel from relitigating

those issues here.  Id. at 14-16.  They also argue that if Mr. Fenwick were to succeed on his

claims before this Court, he would undermine the ruling of the Superior Court that he was

"involved" in the crime of assault on a police officer.  Id.  Such an outcome, they insist, is

impermissible under Heck v. Humphrey, 512 U.S. 477 (1994).  Id.  In support of those

arguments, the defendants have filed as exhibits under seal transcripts of selected portions of the

Superior Court proceedings, as well as certain motions and other documents related to Mr.

Fenwick's trial as a juvenile before the Family Division of that court.

In response, Mr. Fenwick has moved "to strike all exhibits, records and references

to the record of the [Superior Court] proceedings offered by Defendants in support of

Defendants' motion to dismiss and/or for summary judgment," and also "requests an order

prohibiting Defendants from" referring to or quoting from "that record."  Pl.'s Mot. at 3.  It is

difficult to discern upon what basis Mr. Fenwick believes the records should be struck.  His

primary argument appears to be that "M.F.'s Juvenile Court records cannot be used to establish

facts in this civil rights case." Pl.'s Mot. ¶ 20.  That statement, however, misconstrues the nature

of the defendants' arguments concerning the Superior Court proceedings and the purpose for

which the defendants have submitted selected Superior Court transcripts.  The defendants do not

suggest that the Court should adjudicate the facts underlying the plaintiff's claims in this matter

by relying on the transcripts. Rather, they argue that the relevant factual determinations *have*

*already been made* — by the Superior Court — and that revisions of those determinations are

barred by the doctrines of res judicata or collateral estoppel.  See Defs.' Mot. at 17-19.  Records

of prior judicial proceedings are routinely and, indeed, necessarily admitted for the purpose of

establishing the applicability of res judicata or collateral estoppel.  See, e.g., Rogers v. Johnson-

Norman, 466 F. Supp. 2d 162, 165 n.3 (D.D.C. 2006); Alexander v. Washington Gas Light Co.,

481 F. Supp. 2d 16, 24 (D.D.C. 2006).

To the extent that Mr. Fenwick asserts that records of his trial in Superior Court

must be struck because those documents are confidential, his argument is foreclosed.  Although

records of juvenile delinquency proceedings are typically "kept confidential and not open to

inspection," D.C. CODE § 16-2331(b), the Superior Court already has ruled that the defendants

may file in this Court "copies of documents, transcripts and findings by the [Superior] Court"

related to Mr. Fenwick's juvenile proceedings "for use in the civil action brought on behalf of

[Mr. Fenwick]."  In re M.F., Case No. 2008 FSP 000300, Order, at 2 (D.C. Super. Ct. Oct. 22,

2008).  Since the Superior Court has found that District of Columbia law imposes no bar on the

use of those records in these proceedings, this Court will not revisit the issue.

Mr. Fenwick's remaining arguments relate not to the admissibility or

consideration of the Superior Court records, but rather to the merits of the defendants' argument

that the Superior Court proceedings preclude Mr. Fenwick from asserting his constitutional and

FTCA claims.  See, e.g., Pl.'s Mem. at 1-24 (arguing that Heck v. Humphrey, 512 U.S. 477

(1994), is not applicable to this case); id. at 29-34 (contending that rulings from Mr. Fenwick's

trial in the Superior Court should not serve as the basis for the invocation of collateral estoppel in

this action).  Those arguments are properly asserted in an opposition to the defendants' motion

for summary judgment, not in a motion to strike; Mr. Fenwick's disagreement with the merits of

the defendants' legal arguments does not render the records upon which the defendants rely

inadmissible.  Consequently, the Court will deny Mr. Fenwick's objection and motion to strike.

### C.  Defendants' Motion for Summary Judgment

A significant portion of the defendants' motion for summary judgment is devoted

to their argument that Mr. Fenwick is barred from litigating his constitutional and FTCA claims

because the issues underlying them were already resolved against him in the Superior Court.  See

Defs.' Mot. at 14-19.  The related doctrines of claim preclusion and issue preclusion — also

known, respectively, as res judicata and collateral estoppel — "prevent[] repetitious litigation

involving the same causes of action or the same issues."  McGee v. District of Columbia, 646 F.

Supp. 2d 115, 122 (D.D.C. 2009) (quoting I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.,

723 F.2d 944, 946 (D.C. Cir. 1983)) (internal quotation marks omitted).  Those doctrines are

meant to "conserve judicial resources, avoid inconsistent results, engender respect for judgments

of predictable and certain effect, and . . . prevent serial forum-shopping and piecemeal litigation."

Id. at 123 (citation and internal quotation marks omitted).  The doctrines are so integral to the

administration of the courts that "a court may invoke [them] *sua sponte*."  Id. (citing <u>Stanton v.</u>

<u>District of Columbia Court of Appeals</u>, 127 F.3d 72, 77 (D.C. Cir. 1997)).

   In arguing that Mr. Fenwick's claims are precluded, the defendants have relied

principally on <u>Heck v. Humphrey</u>, 512 U.S. 477, 486-87 (1993), in which the Supreme Court

held that "to recover damages for . . . harm caused by actions whose unlawfulness would render a

conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has

been reversed on direct appeal" or otherwise overturned by a judicial or executive act.  The Court

expresses no opinion at this time on the applicability of <u>Heck</u> to the instant action, because it

finds that the question of preclusion must be more thoroughly briefed before the Court will be

able to render a decision on the defendants' motion for summary judgment.  In particular, the

Court requires the parties to answer the following questions:

   1.  Are the principles announced in <u>Allen v. McCurry</u>, 449 U.S. 90 (1980), and

related cases applicable in this action, and if so, what is their impact on Mr. Fenwick's claims?

   2.  In ruling on Mr. Fenwick's motion to suppress tangible evidence (Defs.'

Sealed Ex. 3) during his delinquency trial, did the Superior Court consider and reject his claim of

excessive force?  If so, how does that ruling affect this case?

   The Court emphasizes that it has not reached any conclusions regarding these

questions itself, but cannot develop a clear idea of the implications of the Superior Court

proceedings for this case until they are answered.  In addition, the Court would be aided in

resolving the preclusion issue by reviewing the following additional records from the Superior

Court proceedings:

1.  A transcript of the oral arguments presented to the Superior Court by counsel for Mr. Fenwick and the District of Columbia regarding the motion to suppress tangible evidence; and

2.  The District of Columbia's brief in opposition to Mr. Fenwick's motion to suppress tangible evidence in the Superior Court.

Because consideration of the preclusion issue must be delayed until the parties have answered the questions and supplied the documents specified above, the Court will defer its decision on the defendants' motion for summary judgment until a later date.

## III.  CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is GRANTED in part and DENIED in part, and the plaintiff's motion to strike is DENIED.  The parties shall submit supplemental briefs and additional documentary evidence as directed in Part II.C. of this Opinion and the accompanying Order.  An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: March 8, 2010